**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| KRISTINA DIANNE TOWNSEND, | ) | Case No. 05-31621-jwv |
| | ) | |
| Debtor. | ) | |

### MEMORANDUM OPINION

The sole issue now before the Court in this Chapter 7 case is whether the Debtor, a woman who lives with her same-sex partner and her partner's two children, may claim the "head of household" exemption provided in Mo. Rev. Stat. § 513.440. The statute provides that a person must be the head of a "family" to claim the exemption, and Norman E. Rouse, the Trustee ("Trustee"), has objected to the exemption, arguing that the Debtor's partner and her partner's children are not the Debtor's family. In response, the Debtor maintains that they are, indeed, a family, that she is the head of this family, and that she is therefore entitled to claim the exemption.

The Court held a hearing on the Trustee's objection on February 22, 2006, and took the matter under advisement. Upon consideration of the Debtor's testimony and Missouri law, the Court finds that the Debtor is entitled to the head of household exemption in the amount claimed, for the reasons set out below.

### BACKGROUND

The facts are not disputed, only their interpretation is.

The Debtor, Kristina Dianne Townsend, filed for bankruptcy on September 27, 2005. In her original schedules, the Debtor did not claim the "head of household" exemption set out in Mo. Rev. Stat. § 513.440. However, on January 31, 2006, she amended her schedules to claim $1,900 of her tax refund as exempt pursuant to the "head of household" exemption. The Debtor is not married, nor does she have any biological children of her own, but she claims that for all intents and purposes, she is the head of the family comprised of her "partner" of three years, Megan Townsend, Megan's two children, Kameron (11) and Destiny (2), and herself. Destiny was conceived by artificial insemination. The Debtor, Megan, and Destiny share the same last name as a result of the Debtor's and Megan's decision to legally change their names to Townsend. The Debtor testified

that they did this to evidence their commitment to each other and to be more like a family, because they are unable to get married in Missouri. The Debtor and Megan share parental duties, such as attending parent-teacher conferences, but aside from food stamps and child support (for Kameron) from Megan, the Debtor is the sole source of income for her "family."

## DISCUSSION

Despite the potentially controversial nature of this issue, the analysis is relatively straightforward.

Section 513.440 provides, in pertinent part:

Each head of a family may select and hold, exempt from execution, any other property, real, personal or mixed, or debts and wages, not exceeding in value the amount of one thousand two hundred fifty dollars plus three hundred fifty dollars for each of such person's unmarried dependent children under the age of eighteen years . . . except ten percent of any debt, income, salary or wages due such head of a family.[1]

Interpreting this statute (or analogous predecessors), courts in Missouri have long recognized that the head of a household is "not necessarily a father or a husband."[2] That position, and the benefits derived therefrom, may be claimed by the person in a "family...who controls, supervises, and manages the affairs about the house."[3] Thus, the Debtor's entitlement to the head of household exemption turns on whether the Debtor, Megan, Kameron, and Destiny constitute a "family" and, if so, whether the Debtor "controls, supervises, and manages the affairs" of this family.[4]

As with "head of household," Missouri courts have taken a pragmatic approach to defining "family." As early as 1854 the Missouri Supreme Court stated: "[I]n our opinion, it is not necessary

---

[1] Mo. Rev. Stat. § 513.440.

[2] *Wade v. Jones*, 20 Mo. 75, 1854 WL 4645, *3 (Mo. 1854) (holding that "one, who with his sister, keeps house for his younger brother and sister, thus partly contributing to their support, is the head of a family under the exemptions laws, though neither a husband nor a father...."); *Duncan v. Frank*, 8 Mo.App. 286, 289 (Mo. Ct. App. 1880) (finding that a brother supporting his widowed sister and her four small children was deemed head of household). *See also*, *Ridenour-Baker Grocery Co. v. Monroe*, 43 S.W. 633, 634 (Mo. 1897) (applying same definition of head of household).

[3] *Ridenour-Baker Grocery Co.*, 43 S.W. at 634.

[4] *See State v. Haney*, 277 S.W.2d 632, 636 (Mo. 1955) ("The right [to a homestead exemption] cannot originate without the existence of a family of which the one claiming the right is the head.").

that the relation of husband and wife, or father and child, or mother and child, should constitute a family."[5]  Expanding on this suggestion, the Missouri Court of Appeals proposed the following definition of family:

> A family is the collective body of persons who live in one house, under one head or manager.  The relations between them must be of a *permanent* and *domestic* character, not that of those abiding temporarily together as strangers.[6]

What does it mean for a relationship to be permanent and domestic?  Unfortunately, Missouri courts have not specifically defined either term.  The dictionary gives the Court a useable, albeit somewhat circular, definition of "domestic," meaning "of or relating to family."[7]  But "permanency" cannot be defined literally in light of the Missouri Supreme Court's recognition in *Wade* that a man, his widowed sister, and her children were a family even though he had no legal or immediate blood relationship with the children.  And the marriage relationship, which undoubtedly qualifies as a permanent relationship for exemption purposes, isn't truly "permanent," either, with almost half of all marriages ending in divorce.[8]  A subjective approach to "permanency," however, is workable and consistent with Missouri law.  Therefore, if strangers *intend* their domestic relationship to last indefinitely, they are a family for purposes of the head of household exemption.

In this case, in addition to the Debtor's credible testimony that she is committed to supporting Megan and her children indefinitely, there are two persuasive indicia of the Debtor's and Megan's intention to live together permanently as a family.  First, the Debtor and Megan have taken legal steps – changing both of their names to Townsend – to demonstrate their intention to live as a family.  Second, the Court believes that the Debtor

---

[5] *Wade*, 20 Mo. at 78 (deeming a man, his widowed sister, and her children to be a family for purposes of the man's head of household exemption claim).

[6] *Duncan,* 8 Mo.App. at 289 (citing *Wade v. Jones*, 20 Mo. at 78) (emphasis added).  *See also, State v. Haney*, 277 S.W.2d 632, 636 (Mo. 1955) ("The family relationship must be of a permanent and domestic character, and the living together must not merely be a temporary expedient rendered necessary or desirable by reason of temporary conditions.").

[7] Merriam-Webster Online Dictionary, http://www.m-w.com.

[8] According to statistics published by the Centers for Disease Control and Prevention, in 2004, there were 3.7 divorces for every 7.8 marriages.  *See* http://www.cdc.gov/nchs/fastats/divorce.htm.

has assumed a permanent, parental commitment to Destiny who was conceived by artificial insemination after Megan and the Debtor became partners.[9] These two facts convince the Court that the relationship between the Debtor, Megan, and Megan's children is permanent and domestic for purposes of the head of household exemption.

The Debtor has also sufficiently demonstrated that she is the head of this "family," testifying without contradiction that she earns the bulk of the household income and that she makes the decisions with respect to the financial affairs of the household.

As noted above, according to the early decisions on the head of a household exemption, the head of a family is the one who controls, manages and supervises the home. But this definition is dated. "Father Knows Best" and "Leave it to Beaver" are off the air, and the modern household is far more egalitarian than the ostensibly autocratic, male-dominated households of yore. Nevertheless, only one party may claim the moniker and benefits of head of household for exemption purposes.

In this case, the Debtor's clear economic dominance of the home – contributing over two-thirds of the net household income – establishes the Debtor's role as head of her household. This conclusion takes into account the dynamics of the modern household and, moreover, is consistent with the Eighth Circuit's holding in *Murray v. Zuke*[10] that a divorced father living apart from his ex-wife and three children was entitled to claim the head of household exemption solely because he contributed significant financial support.[11] If someone who doesn't live in, let alone manage, a "household" may claim the head of household exemption based solely on his economic support of that household, surely this Debtor, who financially supports the household and takes the lead role in the management of the household, is entitled to claim that exemption.

## CONCLUSION

---

[9] Although the Debtor did not offer any specific testimony as to the reasons for the decision to conceive Destiny, the Court can well surmise that the Debtor likely had significant input into that decision.

[10] 408 F.2d 483 (8th Cir. 1969).

[11] *Id*. at 487.

For the reasons stated above, the Court overrules the Trustee's objection to the Debtor's claim of a head of household exemption in the amount of $1,900 pursuant to Mo. Rev. Stat. § 513.440. This opinion constitutes the Court's findings of fact and conclusions of law. A separate order will be issued pursuant to Fed. R. Bankr. P. 9021.

**SO ORDERED** this 12th day of April, 2006.

/s/ Jerry W. Venters
HONORABLE JERRY W. VENTERS
UNITED STATES BANKRUPTCY JUDGE

A copy of the foregoing was mailed
conventionally or electronically to:
Norman E. Rouse
Darryl K. Garner